STATE OF NORTH CAROLINA v. EDWARD LEMONS

No. 377A95-2

(Filed 16 June 2000)

**Constitutional Law— right of confrontation—nontestifying codefendant's statements—capital sentencing proceeding—no plain error**

The trial court did not violate defendant's right of confrontation in a capital sentencing proceeding by admitting a nontestifying codefendant's statements that defendant shot the victims because: (1) defendant did not object to the admission of the statements on constitutional grounds at trial, which requires

plain error review and not the constitutional error standard; (2) in a capital sentencing proceeding where the Rules of Evidence do not apply, a trial court has great discretion to admit any evidence it deems relevant to sentencing; (3) the statements were not admitted during the guilt-innocence phase of the trial; (4) the statements were offered by the State in rebuttal only after defendant's introduction of hearsay evidence in support of the N.C.G.S. § 15A-2000(f)(4) mitigating circumstance and the nonstatutory mitigating circumstance that defendant was not the actual shooter; and (5) there was evidence in addition to the codefendant's statements supporting a jury decision not to find the (f)(4) statutory mitigating circumstance or the nonstatutory mitigating circumstances that defendant was not the shooter.

On remand by the United States Supreme Court, 527 U.S. 1018, 144 L. Ed. 2d 768, (1999), for further consideration in light of *Lilly v. Virginia*, 527 U.S. 116, 144 L. Ed. 2d 117 (1999). Heard on remand in the Supreme Court 12 October 1999.

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janine C. Fodor, Assistant Appellate Defender, for defendant-appellant.*

ORR, Justice.

Defendant was convicted on two counts each of first-degree murder, first-degree kidnapping, and robbery with a dangerous weapon at the 25 July 1995 Criminal Session of Superior Court, Wayne County, for his participation in the shooting deaths of Margaret Strickland and Bobby Gene Stroud. Upon the jury's recommendation, the trial court sentenced defendant to death for each murder; the trial court also sentenced defendant to consecutive terms of forty years' imprisonment for each count of kidnapping and robbery. On appeal, this Court found no error, affirming the convictions and the sentences imposed by the trial court. *State v. Lemons*, 348 N.C. 335, 501 S.E.2d 309 (1998).

Subsequently, the United States Supreme Court vacated the sentences of death and remanded the case to this Court for further consideration in light of *Lilly v. Virginia*, 527 U.S. 116, 144 L. Ed. 2d 117 (1999). *Lemons v. North Carolina*, 527 U.S. 1018, 144 L. Ed. 2d 768

(1999). This Court on 9 July 1999 ordered the parties to file supplemental briefs addressing the *Lilly* issue.

In its prior opinion, this Court summarized the evidence supporting defendant's convictions and sentences. *Lemons*, 348 N.C. 335, 501 S.E.2d 309. We will not repeat the evidence here except as is necessary to discuss the question before us on remand from the United States Supreme Court.

At the guilt-innocence phase of defendant's trial, Lemons was found guilty, *inter alia*, of the first-degree murders of both Margaret Strickland and Bobby Gene Stroud based upon "malice, premeditation, and deliberation" and under the felony murder rule in the perpetration of robbery with a firearm. At the capital sentencing proceeding, defendant submitted the N.C.G.S. § 15A-2000(f)(4) statutory mitigating circumstance that the murder "was actually committed by another person and the defendant was only an accomplice in and/or an accessory to the murder and his participation in the murder was relatively minor." Defendant also submitted a nonstatutory mitigating circumstance that "defendant was not the actual shooter." Both the statutory and nonstatutory mitigating circumstances were submitted for each murder.

The issue before this Court on remand from the United States Supreme Court arose out of the submission of the (f)(4) mitigating circumstance and the nonstatutory mitigating circumstance referenced above. The following facts, as stated in our prior opinion, explain the context in which the Confrontation Clause issue arguably arose at trial:

> On 7 July 1995, defense counsel filed a notice of intent, "in the event that the co-defendants in this case, Kwame Teague and Larry Leggett, take the 5th Amendment," to introduce hearsay evidence through James Davis, Antoine Dixon, and Leshuan Lathan. The State responded with a notice of intent to introduce hearsay testimony in the form of statements of codefendants Larry Leggett and Kwame Teague if the trial court allowed the hearsay evidence proffered by the defense.

> After extensive *voir dire*, the trial court ruled that defendant could offer the hearsay evidence of Antoine Dixon and James Davis. The trial court concluded that defendant's evidence was relevant to the issue of mitigation of defendant's punishment. The trial court also noted the State's notice of intent and indicated

that it would be allowed to proceed "if the evidence so shows and so supports it."

Subsequently, defendant called both Leggett and Teague to the stand. Each, respectively, claimed his Fifth Amendment privilege against self-incrimination. Defendant then offered the testimony of both Dixon and Davis in support of the (f)(4) statutory mitigating circumstance that "[t]he defendant was an accomplice in or accessory to the capital felony committed by another person and his participation was relatively minor," N.C.G.S. § 15A-2000(f)(4) (1997), and the nonstatutory mitigating circumstance that "defendant was not the actual shooter of Margaret Strickland or Bobby Gene Stroud."

Subsequently, both Dixon and Davis were called to the stand. Dixon testified that Leggett stated that he (Leggett), Teague, and defendant were involved in the Strickland/ Stroud crimes. Dixon further testified that Leggett told him that Teague shot the man and that Leggett shot the woman. Following Dixon's testimony, Davis also testified that Leggett told him that Teague shot the man and that Leggett shot the woman.

In rebuttal, the State offered two statements that Leggett made to law enforcement officers and two statements that Teague made to law enforcement officers. The confessions of both men allege that defendant personally shot the victims. . . . [D]efendant argues that Teague's confessions were inadmissible because they are unreliable and are not inconsistent with Teague's own hearsay declaration that he planned to "put [the crimes] on Ed [defendant]."

*Lemons*, 348 N.C. at 362-63, 501 S.E.2d at 326 (alteration in original).

Defendant's attorney made the following objection to the admission of Teague's statements at the sentencing proceeding of defendant's trial:

Your Honor, we at this point would like an objection. I believe [the prosecutor] is going for on rebuttal to put forth the two statements given by Kwame Teague and our objection in this matter would be that our understanding on the earlier hearing is we said [the prosecutor] was offering these pursuant to Rule 806 of the Evidence Code for impeachment of testimony on Kwame Teague. The only testimony in this matter in reference to him was that he was going to pin it, that he and Larry were going to pin it

on Edward or Ed and we contend that does not sufficiently open the door to warrant an offer in rebuttal from the State of the two statements of Kwame Teague. That's the purpose of our objection.

While defendant clearly objected to the admission of the two statements made by Teague on evidentiary grounds, we are unable to find any indication that at trial defendant cited the Sixth Amendment or any constitutional grounds as the basis for his objection to the admission of Teague's two statements into evidence.

In defendant's initial brief to this Court, he argued that he "filed [with the trial court] a motion *in limine* to suppress the admission of the codefendant's confessions based in part on possible confrontation problems" and that "following the court's ruling on admissibility, the defendant entered a line objection to Teague's confessions." Thus, according to defendant in his earlier appeal to this Court, the Confrontation Clause issue was properly preserved for appeal.

In actuality, defendant filed a pretrial motion to suppress statements of the codefendants. In paragraph eight of defendant's pretrial motion to suppress, defendant argued to the trial court that

[t]he statements of Leggett and Teague, if offered by the State in a joint trial of all three co-defendants[,] would be inadmissible under the rules laid down in *Bruton v. United States*, 391 U.S. 123[, 20 L. Ed. 2d 476] (1968) and *N.C.G.S. § 15A-927(c)(1)*, and in a trial of this defendant alone on the above referenced charges would be inadmissible hearsay unless the maker of such statements testifies at this defendant's trial.

The trial court never ruled on this motion because the State did not try the defendants in a joint trial and never attempted to introduce the statements at the guilt-innocence phase of defendant's trial. Instead, Teague's statements were introduced during the sentencing proceeding of defendant's trial only as rebuttal to the hearsay evidence offered by defendant in support of the (f)(4) mitigating circumstance and a nonstatutory mitigating circumstance that defendant requested. As noted above, defendant never objected to the admission of Teague's statements on any constitutional grounds at the sentencing proceeding of trial.

This Court has held that " 'constitutional question[s] . . . not raised and passed upon in the trial court will not ordinarily be considered on appeal . . . [and] when there is . . . a motion to suppress

a confession, counsel must specifically state to the court before *voir dire* evidence is received the basis for his motion to suppress or for his objection to the admission of the evidence.' " *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988) (quoting *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982)).

Even though this Court has held that constitutional issues not properly objected to at trial are waived on appeal, Rule 2 of the North Carolina Rules of Appellate Procedure provides:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

This Court has a long precedent of reviewing the record of capital cases to ascertain whether the trial court committed reversible error. *See State v. Gregory*, 342 N.C. 580, 586, 467 S.E.2d 28, 32 (1996) (although the defendant failed to include the exact words "plain error" in his brief, he succeeded in presenting and arguing the issue fully and in establishing conclusively that fundamental error occurred); *State v. Payne*, 328 N.C. 377, 394, 402 S.E.2d 582, 592 (1991) (although the defendant waived his right to have an issue considered on appeal by failing to object or move for mistrial, because this was a capital case, the Court chose to address the issue).

In response to the mandate by the United States Supreme Court to reconsider this case in light of *Lilly* and in keeping with the Court's long precedent of reviewing unpreserved issues in capital cases, we will review the question of whether defendant's Confrontation Clause rights were violated by the admission of Teague's statements. Nonetheless, as we discuss later in the opinion, because there was no issue of constitutional error preserved at trial, we review this question using a plain error analysis.

"The question presented in [*Lilly*] was whether the accused's Sixth Amendment right 'to be confronted with the witnesses against him' was violated by admitting into evidence at his trial a nontestifying accomplice's entire confession that contained some statements against the accomplice's penal interest and others that inculpated the accused." *Lilly*, 527 U.S. at 120, 144 L. Ed. 2d at 124.

The evidence presented at Lilly's trial showed that in early December 1995, Benjamin Lee Lilly (petitioner), his brother Mark Lilly (Mark), and Gary Wayne Barker (Barker) went on a two-day crime spree that included several robberies. *Id.* In the course of these events, one of the three men shot and killed Alex DeFilippis. *Id.* The three men were taken into custody and questioned separately. *Id.* While petitioner did not mention the murder during questioning and said that the other two men had forced him to commit the robberies, Mark and Barker gave different accounts of the events, but both maintained that petitioner killed DeFilippis and planned the robberies. *Id.* at 120-21, 144 L. Ed. 2d at 124.

The police interrogated Mark twice, and during both interviews, Mark repeatedly emphasized that he was drunk during the entire crime spree. *Id.* at 121, 144 L. Ed. 2d at 124. Mark admitted that he stole alcohol during both robberies and at one point handled a gun. *Id.* He also conceded that he was present during Alex DeFilippis' murder. *Id.*

After the police indicated to Mark that he might get a life sentence for his participation in the crimes, he claimed that petitioner and Barker had stolen some guns during the initial robbery, *id.*, and that "Barker had pulled a gun in one of the robberies," *id.* at 121, 144 L. Ed. 2d at 125. Mark "further insisted that petitioner had instigated the carjacking and that he (Mark) 'didn't have nothing to do with the shooting' of DeFilippis." *Id.* Finally, "Mark stated that petitioner was the one who shot DeFilippis." *Id.*

"The Commonwealth of Virginia charged petitioner with several offenses, including the murder of DeFilippis, and tried him separately. At trial, the Commonwealth called Mark as a witness, but he invoked his Fifth Amendment privilege against self-incrimination." *Id.* Thereafter, the Commonwealth offered as evidence Mark's statements made to the police subsequent to his arrest. *Id.* The Commonwealth argued that Mark's statements were admissible as declarations against penal interest by an unavailable witness. *Id.* Petitioner objected, arguing that the statements were not actually against Mark's penal interest, but instead shifted responsibility for the crimes to Barker and to petitioner in violation of the Sixth Amendment's Confrontation Clause. *Id.* at 121-22, 144 L. Ed. 2d at 125. "The trial judge overruled the objection and admitted tape recordings and written transcripts of [Mark's] statements in their entirety." *Id. at* 122, 144 L. Ed. 2d at 125. The jury found petitioner guilty of numerous crimes, including capital murder, and recom-

mended a sentence of death for the murder conviction, which the court imposed. *Id.*

"The Supreme Court of Virginia affirmed petitioner's convictions and sentences." *Id.* "[T]he court . . . concluded that Mark's statements were declarations of an unavailable witness against penal interest; that the statements' reliability was established by other evidence; and, therefore, that they fell within an exception to the Virginia hearsay rule. The court then turned to petitioner's Confrontation Clause challenge." *Id.* The Supreme Court of Virginia noted that " '[w]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.' " *Lilly v. Commonwealth*, 255 Va. 558, 574, 499 S.E.2d 522, 534 (1998) (quoting *White v. Illinois*, 502 U.S. 346, 356, 116 L. Ed. 2d 848, 859 (1992)). The Virginia court further noted that "admissibility into evidence of the statement against penal interest of an unavailable witness is a 'firmly rooted' exception to the hearsay rule in Virginia." *Id.* at 575, 499 S.E.2d at 534. Thus, the court held that the trial court did not err in admitting Mark's statements into evidence. *Id.* Finally, the Virginia court noted the fact "[t]hat Mark Lilly's statements were self-serving, in that they tended to shift principal responsibility to others or to offer claims of mitigating circumstances, goes to the weight the jury could assign to them and not to their admissibility." *Id.* at 574, 499 S.E.2d, at 534.

The United States Supreme Court granted defendant's request for certiorari. *Lilly v. Virginia*, 527 U.S. at 123, 144 L. Ed. 2d at 126. All nine justices of the Supreme Court concurred in the decision that "[t]he admission of the untested confession of Mark Lilly violated petitioner's Confrontation Clause rights." *Id.* at 139, 144 L. Ed. 2d at 136. The Court then reversed the Supreme Court of Virginia and remanded the case to that court to "assess the effect of [the] erroneously admitted evidence in light of substantive state criminal law," *id.*, and "to consider in the first instance whether the Sixth Amendment error was 'harmless beyond a reasonable doubt,' " *id.* at 140, 144 L. Ed. 2d at 136 (quoting *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711 (1967)). While all nine Justices agreed that petitioner's Confrontation Clause rights were violated by the admission of Mark Lilly's confession, the opinion was not unanimous as to the reasoning. Even though the Court ruled that a co-defendant's inculpating statements were precluded in *Lilly*, it reiterated the Court's long-standing position that this type of evidence was not precluded in all circumstances. The plurality noted that

[w]hen a court can be confident—as in the context of hearsay falling within a firmly rooted exception—that "the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility," the Sixth Amendment's residual "trustworthiness" test allows the admission of the declarant's statements.

*Id.* at 136, 144 L. Ed. 2d at 134 (quoting *Idaho v. Wright*, 497 U.S. 805, 820, 111 L. Ed. 2d 638, 655 (1990)).

We begin our review of the issue on remand by noting that the facts surrounding petitioner's claim in *Lilly* are quite different from the facts surrounding defendant's claim in this case. In *Lilly*, the Commonwealth admitted hearsay evidence of a codefendant at the guilt-innocence phase of petitioner's trial that identified petitioner as the shooter. Petitioner objected to admission of the hearsay evidence at trial on Confrontation Clause grounds, and the trial court over-ruled petitioner's objection. Petitioner was then convicted of capital murder and sentenced to death. After the Supreme Court of Virginia upheld petitioner's convictions and sentences, the United States Supreme Court reversed the Virginia Court because it felt petitioner's Confrontation Clause rights had been violated. The United States Supreme Court then remanded the case to the Virginia Court to review the case under the constitutional error standard and to decide whether the Sixth Amendment error was harmless beyond a reasonable doubt.

As has been noted above, in the case *sub judice*, Teague's statements were not admitted during the guilt-innocence phase of the trial, but were admitted in rebuttal to defendant's introduction of hearsay evidence during the sentencing proceeding of trial. Additionally, defendant did not object to the admission of the statements on constitutional grounds at trial. As we will discuss in detail below, defendant's failure to object at trial and properly preserve the constitutional issue for appeal requires us to review this potential constitutional error under the plain error standard of review, not the constitutional error standard required by the United States Supreme Court on remand in *Lilly*.

We further note as stated in our prior opinion in this case:

During the sentencing proceeding, the State "must be permitted to present *any* competent, relevant evidence relating to the defendant's character or record which will substantially support

the imposition of the death penalty." *State v. Brown,* 315 N.C. 40, 61, 337 S.E.2d 808, 824 (1985), *cert. denied,* 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988). Further, "[t]he State may offer evidence tending to rebut the truth of any mitigating circumstance upon which defendant relies and which is supported by the evidence." *State v. Heatwole,* 344 N.C. 1, 21, 473 S.E.2d 310, 320 (1996), *cert. denied,* [520] U.S. [1122], 137 L. Ed. 2d 339 (1997).

*Lemons,* 348 N.C. at 363-64, 501 S.E.2d at 326. Additionally, we note that "[i]n a capital sentencing proceeding, where the Rules of Evidence do not apply, a trial court has great discretion to admit *any* evidence it 'deems relevant to sentenc[ing].' " *State v. Warren,* 347 N.C. 309, 325, 492 S.E.2d 609, 618 (1997) (quoting *Heatwole,* 344 N.C. at 25, 473 S.E.2d at 322), *cert. denied,* 523 U.S. 1109, 140 L. Ed. 2d 818 (1998).

As a preliminary point, it is unnecessary to reevaluate whether Teague's statements were properly admitted under Rule 806 of the North Carolina Rules of Evidence. The trial court ruled that evidence presented by defendant during sentencing attacked Teague's credibility; thus, evidence of statements made by Teague inconsistent with the hearsay statements submitted by defendant was admissible for impeachment purposes. *See Lemons,* 348 N.C. at 364, 501 S.E.2d at 326-27. However, because "[t]he Confrontation Clause . . . bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule," *Wright,* 497 U.S. at 814, 111 L. Ed. 2d at 651, we must review the circumstances surrounding the admission of Teague's statements into evidence.

As noted above, defendant failed to properly preserve at trial the issue of whether his Confrontation Clause rights were violated. Thus, we must evaluate the trial court's actions and consider the United States Supreme Court's holding in *Lilly* under a plain error analysis to determine whether defendant deserves a new capital sentencing proceeding. *See* N.C. R. App. P. 10(c)(4); *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave

error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

In our review of the record for plain error, we must determine whether the admission of Teague's statements at defendant's sentencing hearing, if error, was so egregious and prejudicial that defendant was not able to receive a fair sentencing proceeding as a result of the trial court's decision to let the statements in as evidence. *See id.* A review of the whole record reveals no "plain error."

Defendant was found guilty of the first-degree murders of Margaret Strickland and Bobby Gene Stroud. Teague's statements that defendant personally shot the victims were not admitted into evidence until the sentencing proceeding of the trial. The statements were offered by the State only after defendant offered into evidence in support of the (f)(4) statutory mitigating circumstance and the nonstatutory mitigating circumstance that defendant was not the actual shooter the hearsay evidence of Antoine Dixon and James Davis that Teague shot the victims. Teague's statements were offered merely in rebuttal to hearsay evidence introduced by defendant that defendant was not the actual shooter and played only a minimal role in the victims' deaths.

Finally, contrary to defendant's arguments, there was evidence in addition to Teague's statements supporting a jury decision not to find the (f)(4) mitigating circumstance or the nonstatutory mitigating circumstance that defendant was not the shooter. The jury in defendant's sentencing hearing was the same as in the guilt-innocence phase, and it was allowed to consider all evidence from both the guilt-innocence phase and the sentencing proceeding of defendant's case. During the State's case-in-chief, Jerry Newsome testified that defendant "said that he made a lick and something had went [sic] wrong and he had to kill two white people." There was also circumstantial evidence from which the jury could infer that defendant was the one who shot and killed the victims. The following circumstantial

evidence was presented at defendant's trial: defendant's access to and use of the gun that killed Strickland, chemical indication of blood on defendant's shoes, defendant's admission to being at the crime scene when the victims were killed, and defendant's admission that he lied in several of his statements to the police.

After reviewing *Lilly* and the circumstances surrounding the admission of Teague's statements during defendant's sentencing hearing, we conclude that defendant has not shown plain error by the admission of the statements. The facts surrounding the admission of the challenged statements are not so egregious as to result in a miscarriage of justice by their admission. Defendant received a fair trial, and we conclude that our original decision was correct.

NO ERROR.